ACCEPTED
01-14-00919
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/12/2015 10:53:32 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-14-00919-CV

**IN THE
FIRST COURT OF APPEALS AT
HOUSTON, TEXAS**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

3/12/2015 10:53:32 PM

CHRISTOPHER A. PRINE
Clerk

**JUAN A. RUEDA,** *Appellant*

*vs.*

**RANDALL W. HOLLAND,** *Appellee*

On Appeal from the 11th Judicial District Court of
Harris County, Texas
The Honorable Mike D. Miller, Presiding Judge
Trial Court Case Number 2012-41959

## RANDALL W. HOLLAND'S BRIEF ON THE MERITS

Kristin Bays
State Bar No. 00787914
kristin@baysandbays.com
J. Randal Bays
State Bar No. 01943900
randy@baysandbays.com
1503 Hailey
Conroe, Texas 77301
Phone: (936) 760-7670
Fax: (936) 760-7671
ATTORNEYS FOR RANDALL W.
HOLLAND

-i-

# IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties to the trial court's order that is the subject of this appeal, as well as the names and addresses of all trial and appellate counsel:

Juan A. Rueda        Appellant and Plaintiff Below

    William H. Luck, Jr.      Mr. Rueda's Trial and Appellate Counsel
    Bill. Luck@sbcglobal.net
    1412B Stonehollow Drive
    Houston, Texas 77339
    Phone: 281-358-7611
    Fax: 281-358-0299

Randall W. Holland       Appellee and Defendant Below

    Kristin Bays      Mr. Holland's Appellate Counsel
    kristin@baysandbays.com
    J. Randal Bays
    randy@baysandbays.com
    1503 Hailey
    Conroe, Texas 77301
    Phone: 936-760-7670
    Fax: 936-760-7671

    Michael Boltz      Mr. Holland's Trial Counsel
    Boltz@boltzlaw.com
    1400 Woodloch Forest Drive
    The Woodlands, Texas 77380
    Phone: 832-381-3070
    Fax: 832-218-2400

The Honorable Mark Davidson       Arbitrator

    Mark_Davidson@justex.net
    201 Caroline, 17th Floor
    Houston, Texas 77002
    Houston, Texas 77056
    Phone: 713-368-6600

Enviro-Grow Nursery, Inc.                                          Defendant below
    Rick L. Hawks                           Enviro-Grow Nursery, Inc/'s Trial Counsel
    attomeyrickhawks@gmail.com
    PO Box 1729
    Tomball, Texas 77377-1729
    Phone: 281-251-3198
    Fax: 281-251-1019

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

RECORD CITATION ABBREVIATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

ISSUE PRESENTED.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    AS A MATTER OF LAW, THE UNSIGNED ARBITRATOR'S
    DRAFT OPINION IS NOT AN ARBITRATION AWARD. . . . . . . . . . . . 8

    A.    Texas Law Requires A Final Arbitration Award To Be a Signed,
        Written Document Which Is Delivered to the Parties. . . . . . . . . . . . . 8

    B.    Until There Is an Arbitration Award, an Arbitrator Is Free to
        Change His/Her Mind. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# INDEX OF AUTHORITIES

**TEXAS CASES**                                           **Page**

**Texas Supreme Court**

*Austin v. Healthtrust, Inc.*, 967 S.W.2d 400 (Tex. 1998). . . . . . . . . . . . . . . . . . . 16

*Callahan & Assocs. v. Orangefield Indep. Sch. Dist.*,
92 S.W.3d 841 (Tex. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*City of Midland v. O'Bryant*, 18 S.W.3d 209 (Tex. 2000). . . . . . . . . . . . . . . . . . 16

*City of San Antonio v. McKenzie Constr. Co.*,
136 Tex. 315, 150 S.W.2d 989 (1946).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*CVN Group, Inc. v. Delgado*, 95 S.W.3d 234 (Tex. 2002). . . . . . . . . . . . . . . . . . 7

*East Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267 (Tex. 2010). . . . . . 7

*Ed Rachal Foundation v. D'Unger*, 207 S.W.3d 330(Tex. 2006). . . . . . . . . . . . . 16

*Ritchie v. Rupe*, 443 S.W.3d 856 (Tex. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . 1, 16

*Twyman v. Twyman*, 855 S.W.2d 619 (Tex. 1993). . . . . . . . . . . . . . . . . . . . . . . . 16

**Texas Courts of Appeals**                                     **Page**

*Cooper v. Bushong*,
10 S.W.3d 20 (Tex. App. – Austin 1999, pet denied). . . . . . . . . . . . . . . . . . 9-10, 15

*In re Chestnut Energy Partners, Inc.*,
300 S.W.3d 386 (Tex. App. – Dallas 2009, pet. denied). . . . . . . . . . . . . . . . . . . . 7

*Sydow v. Verner, Liipfert, Bernhard, McPherson and Hand, Chartered*,
218 S.W.3d 162 (Tex. App. – Houston [14th Dist.] 2007, no pet.). . . . . . . . . . 17-18

**TEXAS STATUTES and RULES**                                    **Page**

TEX. CIV. PRAC. & REM. CODE §171.041. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TEX. CIV. PRAC. & REM. CODE §171.053(a). . . . . . . . . . . . . . . . . 5, 8, 9, 11, 14, 15

TEX. CIV. PRAC. & REM. CODE §171.053(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

TEX. CIV. PRAC. & REM. CODE §171.054(a)(1). . . . . . . . . . . . . . . . . . . . . . . 17, 19 n.3

TEX. CIV. PRAC. & REM. CODE §171.087. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

TEX. CIV. PRAC. & REM. CODE §171.088. . . . . . . . . . . . . . . . . . . . . . . . . 7, 13-14

TEX. CIV. PRAC. & REM. CODE §171.091. . . . . . . . . . . . . . . . . . . . . . . . . 7, 19 n.3

TEX. CIV. PRAC. & REM. CODE §171.098(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

**AMERICAN ARBITRATION ASSOCIATION RULES**          **Page**

Rule R-40. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Rule R-46. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 8, 9, 12, 14, 15

Rule R-49. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Rule R-50. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**FEDERAL CASES**                                              **Page**
*AO Techsnabexport v. Globe Nuclear Servs. & Supply CNSS,*
404 Fed. Appx. 793 (4th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*A/S Siljestad v. Hideca Trading, Inc.,*
678 F.2d 391 (2d Cir. 1982) (*per curiam*). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Florasynth, Inc. v. Pickholz*, 750 F.2d 171 (2d Cir. 1984). . . . . . . . . . . . . . . . . . . 7

*Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411 (2d Cir. 1980). . . . . . . . . . . 10

## RECORD CITATION ABBREVIATIONS

"CR" refers to citations from the Clerk's Record. The number immediately following "CR" is the page of the Record.

"RR" refers to citations from the Reporter's Record. The number immediately following "RR" is the page of the Record.

## STATEMENT OF THE CASE

This case is an appeal from a trial court take nothing judgment (CR221), rendered as a result of the confirmation of the "FINAL AWARD OF ARBITRATOR", signed by Judge Mark Davidson (the Arbitrator) on July 9, 2014 (CR151-52). The Arbitrator attached to his "FINAL AWARD OF ARBITRATOR" a draft of an opinion entitled "FINAL AWARD OF ARBITRATOR – NOT SIGNED OR ADOPTED" which gave Appellant a money judgment (CR153-56). On October 7, 2014, Appellee requested that the trial court confirm by judgment the "FINAL AWARD OF ARBITRATOR" (CR107-110). Appellant contested such motion on the theory that the draft opinion should be treated as the final arbitration award (CR140-44). The trial court signed a judgment confirming the "FINAL AWARD OF ARBITRATOR" (CR221). On November 14, 2014, Appellant filed his Notice of Appeal (CR229-31).

## ISSUE PRESENTED

1. The trial court did not err in signing a judgment based upon the *only* award signed by the Arbitrator because Texas law requires an arbitration award to be signed and a trial court to confirm an arbitration award, but the trial court would have erred by signing a judgment based upon the preliminary draft opinion which was never signed, never delivered, and never adopted.

## STATEMENT OF FACTS

Appellant Juan A. Rueda ("Rueda") and Appellee Randall W. Holland ("Holland") were shareholders in a nursery business called Enviro-Grow Nursery, Inc., with Rueda holding a 49% interest and Holland holding a 51% interest (CR153). On July 23, 2012, Rueda sued Holland for minority shareholder oppression (CR5-11). Holland invoked the parties' 1995 arbitration agreement (CR14-19), and, on July 31, 2013, the trial court abated the case and ordered the parties to arbitration through the American Arbitration Association ("AAA") (CR106).

Acting as the sole arbitrator, The Honorable Judge Mark Davidson ("Arbitrator") considered the case at an arbitration trial which occurred on May 7, 2014 and June 5, 2014 (CR151). After completing the arbitration trial, the Arbitrator indicated he was going to rule by June 26, 2014 (RR1:10/10-12). Just two days before that (on June 24, 2014), Holland's counsel discovered the Supreme Court's recent *Ritchie v. Rupe*, 443 S.W.3d 856 (Tex. 2014) opinion, and immediately filed a brief with the Arbitrator to advise that *Ritchie* eliminated Rueda's cause of action for shareholder oppression (RR1:10/13-16).

The next day (June 25, 2014), the Arbitrator re-opened the arbitration with no objections to his doing so (*see* RR1:12/10-11; RR1:10/17-18). The Arbitrator called

for briefing on *Ritchie*[1] (RR1:12/12-13), then, on July 9, 2014, the Arbitrator signed

the "FINAL AWARD OF ARBITRATOR" holding that Rueda take nothing based

upon the *Ritchie* opinion ("Award") (CR151-52).

The Arbitrator sent to the AAA his Award with an attachment, that being a draft

of an opinion entitled "FINAL AWARD OF ARBITRATOR – NOT SIGNED OR

ADOPTED"("Draft") (CR153-56). The AAA administrator delivered the Award and

its attachment to the parties, explaining:

> **Attached is the *duly executed* Award in the above matter** [the Award].
> Judge Davidson has also asked me to forward his original ruling which
> was drafted prior to the *Richie v. Rupe* decision and which was
> supplanted by the final Award [the Draft]. (CR145 (emphasis supplied)).

The Draft never saw the light of day except as an *attachment* to the Award.[2]  So why

*did* the Arbitrator attach a draft to his award?  It was to explain why he ruled against

Holland on his frivolous lawsuit claim:

> I attach the ruling I had written and submitted to the AAA **the day
> before *Richie v. Rupe* was announced by the Texas Supreme Court**.
> The *Richie* case, by its terms, overruled years of precedents from the
> Courts of Appeals that created a common law cause of action for

---

[1] The Arbitrator refers to this opinion as "*Richie*", instead of "*Ritchie*".

[2] CR145 (Luck affidavit: "Attached as Exhibit "2" [CR147-50] and as Exhibit "3" [CR151-56] are the two decisions from Judge Mark Davidson that were both attached to Ms. Kidd's [AAA's administrator] July 9, 2014 e-mail."); RR1:4/21-5/1 (Mr. Luck: AAA administrator sent both the Award and Draft simultaneously); RR1:7/7-14 ("The Court: On the day that you [Rueda] contend it [the Draft] became final, what did you get? Did you get a fax, a piece of paper, an e-mail?  What did you get?  Anything?  Mr. Luck: Nothing that day.  It was when he – on July 9...Got them both at the same time.").

shareholder oppression. My preliminary opinion, as you will see, awarded the Claimant [Rueda] a judgment on that theory. The *Richie* case takes away that theory, and his judgment.

*****

The Respondent [Holland] has countered for his attorney's fees, claiming that this is a frivolous claim. First, but for the timing of the *Richie* opinion, he would have a judgment entered against him. Second, I was aware of the Court of Appeals opinion, and, relied, in part, on it for the reasoning of my preliminary opinion. The Claimant relied on existing case law. That defeats a claim of a frivolous claim as a matter of law. (CR151-52 (emphasis in original)).

Once Rueda lost, he grabbed on to the Draft like a life raft. On July 10, 2014, he filed a motion with the Arbitrator to disregard the Award, insisting that the Draft was complete in all respects except for being signed, and, because it preceded the Award, it was the arbitration award (RR1:10/20-21). The Arbitrator was succinct in his denial of that motion:

> I will give it to you right now.
>> "The motion to Disregard and withdraw the Arbitrator's Award is denied. The transmittal of a draft of a preliminary opinion that was never adopted, signed or sent to all counsel is not a binding ruling. Claimant's [Rueda's] motion is without merit, and is respectfully denied."
>
> and Have a Great Day!
> Mark Davidson

(CR209). In that same vein, the Arbitrator explained via the title he chose for the Draft that it was "NOT SIGNED OR ADOPTED" (CR153). He characterized the Draft in the Award as being a "*preliminary* opinion" (*i.e.*, not a final one) (CR151). He drafted a letter which embodied his preliminary opinion and concluded with a

typewritten "Respectfully submitted" and a typewritten "MARK DAVIDSON" (CR147-50), but the large space where his signature would go was left blank (CR150; RR1:1/6-19). The Arbitrator was clear – the Draft was not an arbitration award, but was, instead, his initial pre-*Ritchie* impression, never signed or adopted, and used only as an attachment to his Award in order to explain why Rueda's claims were not frivolous (CR146; CR151; CR153; CR209).

Rueda tried again with the trial court to eliminate the Award (CR140-218), but, again, met with no success (RR1:14). The trial court was especially focused on the fact that the Draft was not signed:

THE COURT: [A]pparently Davidson said, well, in his mind anyway the initial version was a draft....[I]t doesn't say electronically signed by?

MR. LUCK: It doesn't say that, Judge. (RR1:4/5-9)
*****
MR. BOLTZ: Your honor, the controlling law in this would be the rules of the American Arbitration Association...Rule 46 it requires for a formal award to be in writing and must be signed by the arbitrator.

THE COURT: ...The question is when was the award made. Then R-46, form of award: any award shall be in writing and signed by the majority of the arbitrators. (RR1:11/8-19)
*****
THE COURT: He didn't sign it. (RR1:12/9)
*****
THE COURT: ...Was it in writing? Yes. Was it signed? No. That is what it [Rule R-46] says: Any award shall be in writing and signed by the majority of the arbitrators.

(RR1:12/14-18)

*****

THE COURT: R-46 is pretty clear:  Shall be in writing and signed by the majority of the arbitrators.  (RR1:13/1-2)

*****

THE COURT: [T]he rule is pretty specific, it has to be signed, and that [Draft] was not signed.  I think, therefore – it is unbelievably bad luck....I think without that signature it wasn't a final award.  (RR1:14/15-22)

Being convinced that a signature was required, the trial court signed the Judgment confirming the only signed Award (RR1:15/9-10):

[T]he Court enters judgment in accordance with the *Final Award* [of] *Arbitrator signed by Mark Davidson on July 9, 2014*.

(CR221 – the italicized words are handwritten by the trial court in the Judgment).

## SUMMARY OF THE ARGUMENT

*It may be an interesting appellate issue....*
*They will say, well, the rule requires that it be signed.*
*It wasn't signed.  Therefore, it wasn't final.*
*We are done.*
– Judge Mike D. Miller (RR1:14/22-15/1)

The question in this case is simple – Was the Arbitrator's Draft an arbitration award on the merits which could not be changed and which should have been confirmed in a judgment?  The answer is equally simple – No.

Rueda calls the Draft "complete in all respects, *with the exception of being signed by the [A]rbitrator*."  That exception makes all the difference.  Both Texas Civil Practice and Remedies Code Section 171.053(a) and AAA Rule R-46 ***require***

a final arbitration award to be signed in order to be an arbitration award. So when, as here, the Arbitrator wrote a "draft" of a "preliminary opinion", which was not delivered to counsel, was not delivered to the parties, and was "not signed or adopted", then that draft is just a draft; it is not an arbitration award for purposes of judgment rendition. And when, as here, the Arbitrator signs, dates, and delivers to the parties a written award entitled "FINAL AWARD OF ARBITRATOR", then *that* is the arbitration award on which judgment must be rendered – and it was.

Rueda asks this Court, as he previously unsuccessfully asked the Arbitrator and trial court, to reject the signature requirements of both the AAA Rules and the Code because he "believes" that requiring a signature is simply too onerous. The Court should not use Rueda's "belie[f]" to change the statute and give Rueda a money judgment on a cause of action which does not exist.

Nothing went wrong here. The Arbitrator signed, dated, and delivered one arbitration award, as the law requires. The trial court confirmed it in the Judgment, as the law requires. And this Court should affirm that Judgment, as the law requires.

## STANDARD OF REVIEW

> *Was it in writing? Yes. Was it signed? No.*
> *That is what it [Rule R-46] says:*
> *Any award shall be in writing and signed by the majority of the arbitrators.*
> – Judge Mike D. Miller (RR1:12/14-18)

This Court has jurisdiction over this appeal (TEX. CIV. PRAC. & REM. CODE

§171.098(a)(3)), but review of an arbitration award is "***extraordinarily narrow***". *East Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010). "'All reasonable presumptions are indulged in favor of the award, and none against it.'" *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002) (quoting *City of San Antonio v. McKenzie Constr. Co.*, 136 Tex. 315, 150 S.W.2d 989, 996 (1946)); *see Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984) ("The confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court"). This Court reviews the trial court's confirmation of the award *de novo*. *In re Chestnut Ener. Partners, Inc.*, 300 S.W.3d 386, 397 (Tex. App. – Dallas 2009, pet. denied).

The Texas Arbitration Act ***requires*** a court to confirm an arbitrator's award unless a party offers one of the statutory grounds under Section 171.088 (arbitrator misconduct) or Section 171.091 (correction of clerical errors) for vacating, modifying, or correcting the award. TEX. CIV. PRAC. & REM. CODE §§171.087, 171.088(a), and 171.091(a); *see Callahan & Assocs. v. Orangefield Indep. Sch. Dist.*, 92 S.W.3d 841, 844 (Tex. 2002). The only ground Rueda has ever offered for vacating the Award is his claim that the Arbitrator exceeded his powers as a result of making a decision then changing his mind. TEX. CIV. PRAC. & REM. CODE §171.088(a)(3)(A) ("the court shall vacate an award if...the arbitrators...exceeded their powers"). So if the Draft *was*

an arbitration award, then the Arbitrator was not permitted to change its substance via the Award; but if it was ***not*** (and it was not), then the Arbitrator acted within his authority, did not exceed his powers, and this "extraordinarily narrow" appeal will end in an affirmation of the Judgment.

## ARGUMENT

## AS A MATTER OF LAW, THE UNSIGNED ARBITRATOR'S DRAFT OPINION IS NOT AN ARBITRATION AWARD

While Rueda's complaint in this appeal is that the trial court erred in "entering a judgment on the *second* decision of the [A]rbitrator" (*see* Appellant's Brief at 8), the reality is that, per Texas law and the AAA Rules, there was only a ***first*** decision of the Arbitrator – the Award.

**A.    Texas Law Requires A Final Arbitration Award To Be a Signed, Written Document Which Is Delivered to the Parties.**

> *Until I sign it and it gets entered, it is not effective....*
> *[T]he rule is pretty specific,*
> *it has to be signed, and that was not signed.*
> *I think, therefore – it is unbelievably bad luck.*
> *....I think without that signature it wasn't a final award.*
> – Judge Mike D. Miller (RR1:14/15-22)

Rueda cites AAA Rule R-46 and Civil Practice and Remedies Code Section 171.053(a), and concludes, "neither...state anywhere" that "a decision is not a binding decision of the arbitrator if the formality of the signing of the decision is not done." *See* Appellant's Brief at 12-13.  But, in fact, that is *exactly* what they ***both*** state.

**Rule R-46:** **Any award *shall* be in writing *and signed* by a majority of the arbitrators.**

CR183 (Rule R-46 of the AAA Commercial Rules) (emphasis supplied). This arbitration had but one arbitrator, so the majority would be one – and that majority of one did not sign the Draft (CR153-56; CR147-50). He did, however, sign the Award (CR151).

**Texas Arbitration Act:** **The arbitrators' award *must be* in writing and *signed* by each arbitrator joining in the award.**

TEX. CIV. PRAC. & REM. CODE §171.053(a) (emphasis supplied). Again, this arbitration had but one arbitrator, so each arbitrator joining in the award would be one – and that one did not sign the Draft (CR153-56; CR147-50). He did, however, sign the Award (CR151).

That statutory signature requirement is not optional; it is required in order to make an award valid:

> **Arbitrator's Award – Existence of a Valid Arbitration Agreement**
> Cooper first contends that there is not a valid arbitration award terminating Bushong's parental rights because the award is not in writing or signed by the arbitrator. *See* TEX. CIV. PRAC. & REM. CODE ANN. §171.053 (West Supp. 1999) (hereinafter "General Arbitration Act") (**arbitrator's award must be in writing and signed by arbitrator**)....However, the record reflects that the arbitrator signed an award entitled "Arbitration Decision and Award," which was filed on December 1, 1997....Thus, we find these claims to be without merit.

*Cooper v. Bushong*, 10 S.W.3d 20, 24 (Tex. App. – Austin 1999, pet denied)

(emphasis supplied); *see also id.* at 24 n.10 ("Cooper's attorney stated at the hearing before the district court, 'we have his [the arbitrator's] findings in writing.'").

But the required signature is not the only thing missing from the Draft. It was also never delivered to the parties (CR209), with delivery being another requirement of the Code (TEX. CIV. PRAC. & REM. CODE §171.053(b) ("The arbitrators **shall deliver a copy of the award to each party** personally, by registered or certified mail, or as provided in the agreement."); *Cooper*, 10 S.W.3d at 24 ("arbitrator *shall* deliver a copy of the award to each party")) and the AAA Rules (*see* CR184 (Rule R-49)). Although the AAA administrator did deliver the Draft, she did so *only* as an attachment to the Award, not as an award itself. The only *award* she sent was "the **duly executed** Award in the above matter"– *i.e.*, the Award (CR146).

Those signature and delivery requirements are no small thing. They are designed to make sure that the trial court – and this Court – have the final word on what the Arbitrator intended to be his final word. "In order to be 'final,' an arbitration award must be intended by the arbitrators to be their complete determination of all claims submitted to them". *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 413-14 (2d Cir. 1980) (discussing FAA); *A/S Siljestad v. Hideca Trading, Inc.*, 678 F.2d 391, 392 (2d Cir. 1982) (*per curiam*) (same). Thus, an arbitrator's identification of the arbitration award is critical; the key is when the transformation from "I-think-

I'm-gonna" to "I-have" occurs, and that transformation occurs wholly within an arbitrator's mind until the arbitrator puts it in writing, signs his/her name to it, and delivers it. TEX. CIV. PRAC. & REM. CODE §171.053(a).

That appears to have happened with this Arbitrator. There was a time when he thought Rueda won and he wrote the Draft to that effect (CR147-50; CR153-56). But before he adopted it, signed it, or delivered it, he changed his mind – as judges sometimes do (*see, e.g.*, RR1:14/15-16). He then wrote a new Award, and he adopted it, signed it, and delivered it (CR146; CR151-52; CR209), forever leaving the Draft in the "I-think-I'm-gonna" phase.

Interestingly, Rueda's entire argument is cast in terms of assuming the Draft was the Arbitrator's *first* decision and contending the decision-which-comes-first-is-the-arbitration-award. *See* Appellant's Brief at 8. But the record does not actually reveal that the Draft *was* the first decision. It might have been, or it might have been the third decision, or maybe the sixth. The only thing the record actually reveals is that the Draft preceded the Award, but it might not have even *immediately* preceded the Award – there might have been another decision between the two.

That is precisely why, from a policy perspective, Rueda's position is unworkable. As is the law in Texas, a rule that says the award is the one which is signed and delivered makes the identification of the award obvious, definite, and

objective. In contrast, a rule that says the award is the arbitrator's first decision makes the identification of the award obscure, uncertain, and subjective. With this latter rule, parties and courts would be forced to subpoena arbitrators and their records, and evaluate arbitrators' deliberations, in order to identify what was the first decision. And even that would lead to debates about when a thought becomes a decision, and whether an arbitrator had decided or was just playing devil's advocate. A whole world of expert testimony would be born, as would a new legal speciality – arbitrator psychology. Rueda's rule would be the Lawyers' Full Employment Act.

Instead, this Court should stick to the Texas Legislature's rule which is much easier to manage, require no subpoenas, experts, or arbitration-psychology attorneys, and turns on one simple question: Which one is signed? This approach avoids Rueda's ill-advised level of intrusion, and leaves the question of whether the Draft came first in the realm of mystery. The Draft could only have become an arbitration award if it was adopted, delivered, and, most importantly, signed. It was none of those things, so it is not – and never was – an award.

Strangely, Rueda has already conceded this very point:

THE COURT: Let me see that. **The hearing may be reopened on the arbitrator's initiative at any time before the award is made** [quoting Rule R-40 (CR181)]. The question is when was the award made. Then R-46, form of award: Any award shall be in writing and signed by the majority of the arbitrators (RR1:11/13-19).

**MR. LUCK:** That first one [the Draft] was sent.  I have no problem –
**THE COURT:** **He didn't sign it.**
**MR. LUCK:** **I have no problem with his having authority to reopen.  At the time he asked us to reopen he asked me to respond to *Richie*.  I didn't know he had already decided** (RR1:12/7-13).

Rueda has admitted the Draft was not an award.  AAA Rule R-40 says the Arbitrator may reopen the arbitration "at any time before the award is made" (CR181 at R-40), the Arbitrator reopened after learning about the *Ritchie* opinion (RR110/17-18), *ergo* he had not made an award at that time, which Rueda admits when he says he has "**no problem with his having authority to reopen**" (RR1:12/10-13).  Rueda's real complaint is that he didn't know the Arbitrator had made a decision, but whether he made a *decision* is of no consequence – all that matters if whether he had made that decision into an *award*.  Rueda conceded that he hadn't.

Knowing the law is against him, Rueda tries to distance himself from the signature requirement, which, he claims, is applicable only to cases involving multiple arbitrators, not to this single arbitrator case.  *See* Appellant's Brief at 12-13.  If Rueda is right, then he loses the appeal.  His only basis to vacate the Award is that the Arbitrator exceeded his authority, but, if the use of the plural precludes application to the singular, then the statute is inapplicable to this Arbitrator.  TEX. CIV. PRAC. & REM. CODE §171.088(a)(3)(A) ("the court shall vacate an award if...the

*arbitrators*...exceeded *their* powers"). Admittedly, this argument is absurd, which is why Holland would not make it. Unfortunately, Rueda shows no such restraint.

Rueda's argument is wrong. Section 171.053 requires "*each* arbitrator [who] join[s] in the award" to sign (TEX. CIV. PRAC. & REM. CODE §171.053(a)), and Rule R-46 requires "a *majority* of the arbitrators" to sign (CR183 at Rule R-46). These provisions pay no heed to how many arbitrators there are, and do not suggest that the signature requirement does not apply to a single arbitrator case. All they do is describe that those in agreement, however many "those" are, must sign. The Code expressly contemplates single arbitrator cases, and makes no distinction as to the requirements of Chapter 171 based upon the number of arbitrators. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE §171.041(b) ("The court, on application of a party...shall appoint **one or more** qualified arbitrators..."); *id.* at §171.041(c) ("**An arbitrator** [singular] appointed under Subsection (b) has the powers of **an arbitrator** [singular] named in the agreement to arbitrate.").

And, realistically, what would be the logic of requiring many arbitrators to sign but not a single arbitrator? The idea of having signatures is to confirm what the award is; the number of arbitrators making the award is immaterial to that objective. Whether one or many, arbitrators are bound by the tenets of Chapter 171, including the requirement that those who join in an award must sign it. TEX. CIV. PRAC. & REM.

CODE §171.053(a); *Cooper*, 10 S.W.3d 20, 24.

Undaunted, Rueda asks this Court to make new law. He asks this Court to ignore the signature requirement because he "believes" it is an unnecessary "formality":

> Rueda believes that requiring a single arbitrator arbitration decision to be signed by the arbitrator in order for the decision to be considered as the arbitrator's decision (when neither the Commercial Rules of the AAA nor Chapter 171 of the Texas Civil Practice & Remedies Code states this) would be adding a level of judicial-type formality to the arbitration process (making this a requirement would be similar to a judgment in a court of law) – and this type of formality is exactly what the arbitration process by its very nature is intended to avoid.

*See* Appellant's Brief at 13. What Rueda "believes" is irrelevant compared to what the Texas Legislature and the AAA *require*. In fact, Rueda cites no authority for the proposition that requiring a signature on an award is the "type of formality...the arbitration process...is intended to avoid". There is a reason for that – no such authority exists. In fact, the Texas Arbitration Act, which *defines* "the arbitration process", explicitly *includes* this signature requirement. TEX. CIV. PRAC. & REM. CODE §171.053(a).

Accepting Rueda's position would require the Court to change the law to say the signature *requirement* in Section 171.053 (and Rule R-46) is no requirement at all. ***That*** would be unwarranted, especially given the Supreme Court's requirement in *Ritchie* that courts exercise great restraint as to making new law in areas covered by

Page 15 of 21

statute:

> **The Legislature has crafted a statutory scheme governing domestic corporations [or, in this case, arbitration]. The statutes are detailed and extensive, reflecting legislative policy judgments about when the government should step in to impose rights and obligations on the parties and when the parties should be free to dictate their own rights and obligations *vis-à-vis* each other and the business. *This Court has the prerogative to superimpose a common-law cause of action upon this statutory framework – though not to alter or contravene the statutory framework – but we exercise that power sparingly, careful not to upset the Legislative balance of policies, and only when warranted by a genuine need.* See, e.g., [Ed Rachal Foundation v.] D'Unger, 207 S.W.3d [330] at 331 [(Tex. 2006)]; [City of Midland v.] O'Bryant, 18 S.W.3d [209] at 216 [(Tex. 2000)]; Austin, [v. Healthtrust, Inc.], 967 S.W.2d [400] at 401 [(Tex. 1998)]; see also Twyman [v. Twyman], 855 S.W.2d [619] at 630 [(Tex. 1993)] (Hecht, J., joined by Enoch, J., concurring in part and dissenting in part) ("This Court, as steward of the common law, possesses the power to recognize new causes of action, but the mere existence of that power cannot justify its exercise. There must be well-considered, even compelling grounds for changing the law so significantly. Where, as here, no such grounds are given, the decision is more an exercise of will than of reason."). We find no such necessity here, and therefore decline to recognize a common-law cause of action for "shareholder oppression."**

*Ritchie v. Rupe*, 443 S.W.3d 856, 891 (Tex. 2014) (emphasis supplied).

The situation in *Ritchie* applies here in three ways: (1) It applies to eliminate Rueda's claimed cause of action in its entirety, so that Rueda's attempt to have this Court allow him a cause of action which the Supreme Court says does not exist should fail; (2) It applies to address the fact that the common law cannot be used to "alter or contravene" a statute, so that his attempt to have this Court alter and contravene the

Page 16 of 21

statutory requirements of signing and delivering an arbitration award should fail; and

(3) It applies to show that before imposing any change to the law, there must be a necessity to do so, so that his attempt to have this Court create a common law holding that whatever decision an arbitrator makes first constitutes the final arbitration award is hardly necessary – it is, in fact, ill-advised and should fail.

If *Ritchie* had not happened, Rueda might have won. But *Ritchie* **did** happen, and it happened before the Arbitrator had signed and adopted an arbitration award, such that the Arbitrator complied with Texas law and gave Rueda nothing on his now non-existent shareholder oppression claim. Rueda does not like that, and who can blame him? But nothing legally impermissible happened. Rueda seeks an outcome where he is permitted to recover on a non-existent cause of action – but the law does not provide him such.

**B.    Until There Is an Arbitration Award, an Arbitrator Is Free to Change His/Her Mind.**

> ***THE COURT: Which is the one?***
> ***MR. BOLTZ: The one that says: Final.***
> (RR1:7/25-8/2)

When an arbitration award is made – that is to say when the arbitrator adopts a decision, signs it, and delivers it – he/she cannot change its substance. TEX. CIV. PRAC. & REM. CODE §171.054(a)(1); Rule R-50 (CR184); *Sydow v. Verner, Liipfert, Bernhard, McPherson and Hand, Chartered*, 218 S.W.3d 162, 169 (Tex. App. –

Houston [14th Dist.] 2007, no pet.). But while an arbitrator is deciding, contemplating, considering, thinking about it, and mulling it over, he/she is without constraints to change, adapt, vacate, make adjustments and change his/her mind. It is only once he/she settles on a decision and affixes his/her signature to it that the deal is done – no take backs. It is on this point that Rueda's appeal turns because he claims that the Draft was the arbitration award, such that the Award could not supplant it without violating the finality laws. But it was *not* an arbitration award, as discussed at length in (A), *supra*, such that the Arbitrator was free to change it as much and as often as he chose without exceeding his authority.

Here, the Award was the arbitration award, and it was never changed in any way. Because there was no change to the arbitration award, the Arbitrator did not overstep his bounds, leaving the trial court with no grounds to do anything other than what it did – confirm the award.

The problem is that Rueda's entire Brief describes a situation which does not exist in this case. Here, the Arbitrator made only one award; he was originally headed in a direction different from the one he ultimately took, **but he changed his mind prior to making an award, and *that* he is permitted to do** (*compare* CR151 *to* CR153-56). Rueda's entire pitch is that the Arbitrator had no power to change his mind, *but he does.* He only loses that power **after** he has made a final (a/k/a signed)

decision. *See, e.g., AO Techsnabexport v. Globe Nuclear Servs. & Supply CNSS*, 404 Fed. Appx. 793, 799 (4th Cir. 2010) ("arbitrators complete their function and lose their authority to act after making *a final determination* on a matter. This principle, known as the doctrine of *functus officio*, prevents an arbitrator from reexamining the merits of *a final award*.") (emphasis supplied).

There is no law precluding the Arbitrator from changing his mind; the law only precludes him from changing his decision once it if formalized in an *award*[3] – which didn't happen here (CR151-52). In the Judgment, the trial court did not use some vague reference to "an" arbitration award; it very deliberately entered its Judgment with reference to a particular title of a particular document of a particular date which the Arbitrator signed and which he said expressly was his final decision (*compare* CR221 *to* CR151-52; RR1:15/9-10). This Court should decline to deviate from this correct course to, instead, create new law which both contravenes the Texas Arbitration Act and defies the *Ritchie* ruling. Instead, this Court should affirm.

---

[3] TEX. CIV. PRAC. & REM. CODE §171.054 (a)(1) (an arbitrator has authority to "…modify or correct an award…on the grounds stated in Section 171.091…"); *id*. at §171.091 (can modify or correct award if it "contains...an evident miscalculation of numbers" or "an evident mistake in the description of a person, thing, or property referred to in the award"; or if the arbitrator made an award on something not submitted, but only if "the award may be corrected without affecting the merits of the decision made with respect to the issues that were submitted"; or "the form of the award is imperfect in a manner not affecting the merits of the controversy.").

## PRAYER FOR RELIEF

For the reasons in this Brief, Randall W. Holland respectfully requests this Court affirm the Judgment, and award him all such other relief to which he is entitled.

Respectfully submitted,
BAYS & BAYS
1503 Hailey
Conroe, Texas 77301
Phone: (936) 760-7670
Fax: (936) 760-7671

_____/s/ Kristin Bays_____

Kristin Bays
State Bar No. 00787914
kristin@baysandbays.com
J. Randal Bays
State Bar No. 01943900
randy@baysandbays.com
ATTORNEYS FOR RANDALL W. HOLLAND

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i), I certify that this Brief was computer-drafted with WordPerfect using Times New Roman font, with 14 point font for the text and 12 point font for the footnotes.  I further certify that the word count, as generated by WordPerfect, for every word and every part of this Brief, including headings, footnotes, and quotations, was counted except for the following:

> the caption, the identity of parties and counsel, the table of contents, the index of authorities, the statement of the case, the statement of the issue presented, the signature, the proof of service, the certification, this certificate of compliance, and the appendix

total **4,948** words.

_____/s/ Kristin Bays_____

Kristin Bays

# CERTIFICATE OF SERVICE

This certifies that the undersigned served Randall W. Holland's Brief on the Merits on the following counsel of record by e-service on March 12, 2015:

William H. Luck, Jr.
Bill. Luck@sbcglobal.net
1412B Stonehollow Drive
Houston, Texas 77339
**Lead Counsel for Appellant**

/s/ Kristin Bays
Kristin Bays