**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1853**

DENVER GLOBAL PRODUCTS, INC.

        Plaintiff – Appellee,

    v.

ROGER LEON; KEITH PIERCY

        Defendants – Appellants,

    and

JEANNE HENDRIX

        Defendant,

    v.

RATO NORTH AMERICA, INC.; GODWIN LENG; CHONGQING RATO POWER MANUFACTURING CO., LTD.; MICHAEL PARKINS; JIN XIANG; CHONGQING RATO TECHNOLOGY CO., LTD.; LARRY QIAN WANG; CHONGQING RATO POWER CO., LTD.; ZHU LIEDONG

        Third Party Defendants – Appellees.

Appeal from the United States District Court for the Western District of North Carolina at Statesville. Max O. Cogburn, Jr., District Judge. (5:17-cv-00102-MOC-DSC)

Submitted: March 26, 2020                    Decided: June 8, 2020

Before MOTZ, HARRIS, and QUATTLEBAUM, Circuit Judges.

---

Affirmed by unpublished opinion. Judge Harris wrote the opinion, in which Judge Motz and Judge Quattlebaum joined.

---

William R. Terpening, Daniel J. Prichard, TERPENING LAW PLLC, Charlotte, North Carolina, for Appellants. Douglas M. Jarrell, Stuart L. Pratt, ROBINSON, BRADSHAW & HINSON, P.A., Charlotte, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

This appeal involves a dispute over the validity of arbitration provisions included in a series of international business contracts. The district court granted a motion to compel arbitration, rejecting one party's claim that he had never assented to arbitration, and confirmed a foreign arbitration award entered pursuant to the provisions. We now affirm the district court's judgment.

## I.

Chongqing Rato Power Co., Ltd. ("Rato") is a Chinese company headquartered in Chongqing, China, that manufactures and sells engines, motorcycles, and related products. Roger Leon is a lawyer by training who has worked for 30 years as an executive in the outdoor-power products industry. In 2010, Leon and Larry Wang formed a North Carolina corporation called Denver Global Products, Inc. ("Denver Global"), for the purpose of distributing Rato's outdoor power products in the United States.

Through a series of interrelated transactions, Rato acquired ownership of Denver Global from Leon and Wang, with Leon remaining as the President of Denver Global. In late 2011, the parties executed an Initial Agreement in which Rato acquired Leon and Wang's interest in Denver Global in exchange for Rato stock. Rato subsequently learned, however, that certain features of the Initial Agreement were not permitted under Chinese law. Accordingly, the parties negotiated and entered into a series of three agreements in lieu of the Initial Agreement: a Framework Agreement, an Equity Agreement, and a Joint Venture Agreement (together, the "Substitute Agreements"). Each of those agreements

3

was negotiated and executed in Chongqing, China, and each contains an arbitration clause. Those provisions are substantially similar, requiring the parties to resolve disputes arising out of the Substitute Agreements by arbitration before an arbitral commission in China.

The relationship between the parties deteriorated and in 2015, Denver Global filed an action against Leon in North Carolina state court.[1] According to Denver Global, Leon had committed various business torts by embezzling its funds and making unauthorized payments to key employees to induce them to resign. Leon responded with twelve counterclaims against Denver Global as well as several third-party claims against Rato.[2] All of the parties' claims were made under state law.

Rato moved in state court to dismiss Leon's third-party claims or, in the alternative, to stay those claims and compel arbitration (the "Motion to Compel"). According to Rato, most of Leon's third-party claims arose out of the Substitute Agreements and were thereby covered by the binding arbitration provisions in those agreements.[3] Leon opposed the Motion to Compel on the ground that there was no valid agreement to arbitrate. Although he had signed the Substitute Agreements, Leon argued, he had not in fact assented to

---

[1] The lawsuit also named as a defendant Keith Piercy, another senior officer of Denver Global, and both Leon and Piercy are appellants here. Because the issues raised on appeal focus on Leon's conduct and the arbitration agreements he signed, we refer to the appellants collectively as "Leon."

[2] The third-party claims were filed against Rato, several of its affiliates and subsidiaries, and the officers and directors of those entities, which we refer to collectively as "Rato."

[3] Rato has not sought to compel arbitration of two of the third-party claims: a claim for tortious interference and a claim for negligent infliction of emotional distress.

4

arbitration, primarily because he had neither the benefit of Chinese counsel nor the assistance of an honest interpreter when the agreements were executed.

While its Motion to Compel still was pending before the state court, Rato commenced arbitration proceedings against Leon in China before the Chongqing Arbitration Commission (the "Commission"), seeking a ruling on claims under the Equity and Joint Venture Agreements. Because Leon's third-party claims in state court challenged the validity of the Substitute Agreements' arbitration provisions, Rato also sought a declaratory judgment from the Commission that the arbitration provisions in the Equity and Joint Venture Agreements were valid and legally binding as to Leon. Although Leon was served with Rato's arbitration demands in August of 2016, he did not move to enjoin the arbitration proceedings or request the Commission to stay the arbitration while the Motion to Compel was pending in state court. Nor did he make an appearance at the October 2016 arbitration.

In November of 2016, the Commission issued awards in favor of Rato, finding that the Equity and Joint Venture Agreements "reflect[ed] the genuine intention[s] of [Leon]," that both agreements were "lawful and valid," and that "there [was] no fraud, coercion, material misunderstanding, obvious unfairness or any other situation that would affect the effectiveness of the agreement[s]." J.A. 619–20 (Equity Agreement); *see also* J.A. 646–48 (Joint Venture Agreement). The Commission ordered Leon to reimburse Rato for both its attorney fees and the arbitration fees.

Rato then returned to state court and filed a motion to confirm the Commission's arbitration award (the "Motion to Confirm") pursuant to the Convention on the Recognition

5

and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"). *See* 21 U.S.T. 2517. Leon removed the state court action to the United States District Court for the Western District of North Carolina pursuant to 9 U.S.C. § 205, which gives the district court jurisdiction over actions relating to "an arbitration agreement or award falling under the Convention," and Rato refiled its Motion to Compel and its Motion to Confirm in that court.

A magistrate judge issued a Memorandum and Recommendation in favor of granting both the Motion to Compel and the Motion to Confirm. On July 16, 2018, the district court entered an order affirming the Memorandum and Recommendation in full and granting the Motion to Compel and the Motion to Confirm. *See Denver Glob. Prod., Inc. v. Leon*, No. 5:17-CV-00102-MOC-DSC, 2018 WL 3428149, at *4 (W.D.N.C. July 16, 2018).[4] Leon timely appealed the district court's entry of judgment in favor of Rato.

## II.

### A.

We turn first to the district court's decision to grant the Motion to Compel. This court reviews a district court's legal determinations regarding a motion to compel arbitration de novo, *see Virginia Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*, 984 F.2d 113, 116 (4th Cir. 1993), but "the underlying factual findings of the district court are

---

[4] Consistent with the recommendation of the magistrate judge, the district court also dismissed as moot Rato's motion to dismiss Leon's claims, originally filed as an alternative to Rato's Motion to Compel. *Leon*, 2018 WL 3428149, at *4.

entitled to deference," *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 203–04 (4th Cir. 2004).

On appeal, Leon argues that there are genuine disputes of material fact bearing on the validity of the arbitration provisions in the Substitute Agreements. According to Leon, he has raised two factual contentions that call into question whether he actually agreed to arbitrate his claims against Rato when he signed the Substitute Agreements: First, Leon alleges, he did not have Chinese counsel present when he negotiated and executed those agreements; and second, he did not have the assistance of an impartial interpreter when he signed them. Because there are factual disputes as to both those points, Leon maintains, the district court erred by granting Rato's Motion to Compel without further fact-finding. We disagree.

We begin with the district court's finding that Leon's contentions were unsupported by the record and gave rise to no genuine factual disputes. With respect to counsel, the district court agreed with the magistrate judge that Leon indeed had retained Chinese counsel who advised him concerning the contracts. There was record evidence, the district court explained, that Leon had hired Chinese counsel to make demands on Rato "based on the contents of the Substitute Agreements," and that in the course of those demands, counsel had acknowledged and indeed relied on the fact that Leon had entered into the Substitute Agreements. *Leon*, 2018 WL 3428149, at *2. In light of such evidence, the court concluded, Leon was "simply wrong as to [this] factual contention." *Id.* And with respect to the interpreter, the court noted that Leon was not contending that no interpreter was present when he signed the Substitute Agreements, but only that his interpreter had

7

turned out to be unreliable. But there was "nothing in the record," the district court concluded, that "explain[ed] why [Leon would] think – many years later – that [his] interpreter may not have been honest." *Id.* Moreover, the district court finished, multiple parties had attested that an interpreter indeed had explained the Substitute Agreements to Leon. *Id.*

As noted above, we owe deference to the district court's factual findings, *see Patten*, 380 F.3d at 203–04, and we do not intend to cast doubt on them here. But we need not pass on those findings, because regardless of whether Leon could identify a dispute of fact on either of his contentions, he could not show that any such dispute would be *material* to the validity of the Substitute Agreements' arbitration provisions. Leon's argument, at bottom, is that there is no valid and enforceable arbitration agreement in this case because – according to his own allegations – he did not retain Chinese counsel or an "honest" interpreter to explain that agreement to him. But under North Carolina law, Leon's unilateral decision not to hire his own Chinese counsel or his own independent Chinese interpreter would not provide a defense to enforcement of the contract he signed. It was Leon's "duty," when he executed the Substitute Agreements, to "read [them] for his own protection," *Biesecker v. Biesecker*, 302 S.E.2d 826, 828–29 (N.C. Ct. App. 1983) (citation omitted), and having signed those agreements voluntarily, he is "charged with knowledge of their contents," *Raper v. Oliver House, LLC*, 637 S.E.2d 551, 555 (N.C. Ct. App. 2006) (citation omitted) (applying standard state-law contract principles to arbitration

8

agreements).[5] Particularly here, where Leon was a "sophisticated businessman knowingly engaging in an international transaction," J.A. 753, his alleged failure to have Chinese counsel or a more honest interpreter assist him simply is not a material fact regarding his assent to the arbitration agreements. *See Leonard v. Southern Power Co.*, 70 S.E. 1061, 1063 (N.C. 1911) ("[T]he law will not relieve one who can read and write from liability upon a written contract, upon the ground that he did not understand the purport of the writing, or that he has made an improvident contract, when he could inform himself and has not done so.").

Because Leon has identified no material dispute of fact that would preclude the grant of Rato's Motion to Compel, we affirm the district court's judgment in that respect.[6]

---

[5] In reviewing a claim that there is no valid agreement to arbitrate – the gist of Leon's claim here – courts generally "apply ordinary state law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

[6] Leon also suggests that the district court applied the wrong standard of review in connection with the Motion to Compel, failing to view the record evidence in the light most favorable to Leon as would be appropriate with respect to a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. But the district court expressly recognized that "relevant factual disputes concerning a motion to compel arbitration generally should be evaluated similarly to a motion for summary judgment." *Leon*, 2018 WL 3428149, at *3 (citing *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015)). And in any event, as we have explained above, because the factual contentions identified by Leon are not material to the validity of the arbitration agreements in question, any error by the district court in analyzing those factual contentions would not affect the outcome here.

**B.**

Having concluded that the Motion to Compel was properly granted, we turn now to the Motion to Confirm. We review a district court's confirmation of an arbitration award de novo and its associated findings of fact for clear error. *See AO Techsnabexport v. Globe Nuclear Servs. & Supply GNSS, Ltd.*, 404 F. App'x 793, 797 (4th Cir. 2010) (citation omitted).

Congress adopted and implemented the terms of the New York Convention of June 10, 1958 by statute, *see* 9 U.S.C. § 201, in order to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). Under Section 207 of the Federal Arbitration Act ("FAA"), parties to an arbitration agreement covered by the New York Convention – like Rato here – may seek confirmation of a foreign arbitration award in Unites States district courts, subject to seven specific defenses laid out in Article V of the Convention. *See* 9 U.S.C. § 207; 21 U.S.T. 2517, Art. V. On appeal, Leon invokes some of those defenses, but takes issue primarily with the timing of the Chinese arbitration proceedings: According to Leon, Rato improperly commenced arbitration while its Motion to Compel remained pending in state court, and the district court should have denied confirmation on that ground. Again, we disagree.

It is true, as Leon emphasizes, that Section 4 of the FAA establishes a detailed procedure by which parties may petition a district court to compel arbitration. *See* 9 U.S.C. § 4. But it does not follow that a party *must* move to compel before initiating arbitration, or that a court order on a motion to compel is a prerequisite for arbitration. On the contrary:

10

Section 4 sets out the terms under which a resisting party may be "direct[ed]" to participate in an arbitration, not the conditions under which a counterparty will be permitted to commence that arbitration. *Id.* (permitting courts to direct non-compliant parties to proceed with arbitration). Nothing in the text of Section 4 – or any other FAA provision – requires court approval before the initiation of arbitration, and Leon can point us to no case law suggesting otherwise.[7] Nor is that surprising; as Rato argues, requiring a party to obtain pre-approval for arbitration in court would undermine the very purpose of arbitration, which is to promote "the quick resolution of disputes and the avoidance of the expense and delay associated with litigation," *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193 (4th Cir. 1998) (citation omitted).

Leon also points to the well-settled rule that parties may not be required to arbitrate unless they have agreed to do so. *See United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). It follows, Leon argues, that an arbitration award cannot be enforced, or a motion to confirm granted, if there is a dispute about a party's assent to arbitration that has yet to be resolved by a court – through a ruling, for instance, on a motion

---

[7] The parties focus on a series of cases involving the circumstances under which courts may enjoin parallel foreign proceedings to protect their own jurisdiction. *See*, *e.g.*, *BAE Sys. Tech. Sol. & Servs. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 479–80 (4th Cir. 2018); J.A. 751 (magistrate judge discussion of *BAE*). But those cases turn on the exceptional nature of the power to enjoin legal proceedings, to be used only "sparingly," and the additional international comity concerns that are implicated when that power is applied to foreign proceedings. *BAE Sys.*, 884 F.3d at 479 (citation omitted). We think they have little bearing on the issue before us today, which involves no intervention into foreign proceedings but only a decision to *enforce* a foreign tribunal's arbitration award.

11

to compel. *Cf. AT&T Techs. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 649 (1986) ("[T]he question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). We take no issue with that proposition, and indeed, the New York Convention provides as much, making the absence of a valid agreement to arbitrate an express defense to confirmation of a foreign arbitration award. *See* 9 U.S.C. §§ 201, 207; 21 U.S.T. 2517, Art. V(1)(a). But that principle simply is not implicated here, where the district court *did* rule on Leon's claim that there was no valid agreement to arbitrate and – as we hold above – properly rejected it.

Finally, we turn to Leon's specific defenses to confirmation under Article V of the New York Convention, none of which is availing. Leon first invokes the Article V defense, noted above, for cases in which there is no "valid" agreement to arbitrate. But for the same reasons we have affirmed the district court's judgment that Leon in fact assented to the arbitration provisions in the Substitute Agreements, Leon cannot prevail on that defense to confirmation.

Leon also invokes the Article V provision allowing a court to refuse enforcement if the party against whom an award is entered was "unable to present his case" in arbitration. 21 U.S.T. 2517, Art. V(1)(b). According to Leon, that defense applies here, because his poor health and limited financial resources made it impossible for him to attend the arbitration in China himself or to retain and direct counsel to represent him. We agree with the district court, however, that the record offers no support for Leon's position. *See Leon*, 2018 WL 3428149, at *2–3. Leon's counsel in fact filed "numerous" responsive filings and affidavits related to the arbitration, including two affidavits in October, "just

12

weeks before the arbitration proceedings in China." *Id.* at \*2. But despite those many filings, "Leon never requested any accommodations to participate remotely in the proceedings, or any attempts to delay the proceedings due to illness." *Id.* Nor did Leon provide any individualized evidence that he was financially incapable of meeting the anticipated costs of arbitration, including the retention of counsel, as he was required to do *before* the foreign arbitration proceedings began. *See id.* at \*3; *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 558 n.7 (4th Cir. 2001) (An "individual who claims to be financially burdened by [an arbitration] provision should raise his objections . . . , including a specific forecast of his expected costs and his expected financial burden, prior to the beginning of arbitration.").[8]

### III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*

---

[8] Leon also argues, for the first time on appeal, that the award should not be confirmed under Article V because "recognition or enforcement of the award would be contrary to [] public policy." 21 U.S.T. 2517, Art. V(2)(b). Because Leon did not raise this defense before the district court, we decline to consider it now. *See, e.g.*, *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 603 (4th Cir. 2004) ("Absent exceptional circumstances . . . we do not consider issues raised for the first time on appeal[.]"). We note, however, that Leon has identified no compelling grounds for application of this defense, which is construed narrowly and excuses confirmation only when enforcement of a foreign award would "violate the forum state's most basic notions of morality and justice." *Fotochrome, Inc. v. Copal Co.*, 517 F.2d 512, 516 (2nd Cir. 1975) (citation omitted).