**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 09-2064**

─────────────

AO TECHSNABEXPORT, a legal entity organized and existing
under the laws of the Russian Federation,

        Plaintiff - Appellee,

      v.

GLOBE NUCLEAR SERVICES AND SUPPLY GNSS, LIMITED, d/b/a
Global Nuclear Services and Supply, Limited, a Delaware
corporation,

        Defendant – Appellant.

─────────────

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.   Alexander Williams, Jr., District
Judge. (8:08-cv-01521-AW)

─────────────

Argued: September 22, 2010      Decided: December 15, 2010

─────────────

Before TRAXLER, Chief Judge, and DAVIS and KEENAN, Circuit
Judges.

─────────────

Affirmed by unpublished opinion.   Judge Keenan wrote the
opinion, in which Chief Judge Traxler and Judge Davis joined.

─────────────

**ARGUED:** Andrew K. Fletcher, PEPPER & HAMILTON, LLP, Pittsburgh,
Pennsylvania, for Appellant.  Kevin McNulty, GIBBONS PC, Newark,
New Jersey, for Appellee.  **ON BRIEF:** Richard M. Weibley, PEPPER
& HAMILTON, LLP, Pittsburgh, Pennsylvania; Matthew H. Adler,
PEPPER & HAMILTON, LLP, Philadelphia, Pennsylvania, for
Appellant.   Craig M. Palik, MCNAMEE, HOSEA, JERNIGAN, KIM,

GREENAN & LYNCH, PA, Greenbelt, Maryland; David E. De Lorenzi, GIBBONS PC, Newark, New Jersey, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

KEENAN, Circuit Judge:

Globe Nuclear Services and Supply, Limited (Globe) challenges the district court's judgment confirming the final award of a Swedish arbitration tribunal in favor of AO Techsnabexport (Tenex). Globe's appeal presents three issues: 1) whether the arbitration tribunal improperly considered "witness statements" of individuals who were not available for cross-examination; 2) whether the tribunal exceeded its permissible scope of review by considering matters related to Russian criminal law; and 3) whether the tribunal lacked authority to enter the final award after previously deciding certain questions in the partial award. Upon consideration of these issues, we affirm the district court's judgment confirming the final award.

I.

Tenex is a joint stock company organized under the laws of the Russian Federation, and was appointed by an agency of the Russian Federation to direct the management of Russian nuclear materials. Globe is a corporation established under Delaware law that maintains its headquarters in Maryland. Globe buys, sells, and trades various forms of uranium used in the production of nuclear fuel.

In January 2000, Tenex and Globe entered into a contract for the sale of uranium hexafluoride (uranium), in which Globe agreed to purchase uranium from Tenex from 2001 through 2013 (the contract). The contract contained an arbitration clause, which provided that "any [] dispute, controversy or claim arising out of or relating to [the contract] or the breach, termination or invalidity thereof" shall be settled by arbitration, and that the contract shall be governed by the laws of Sweden.

In November 2003, Tenex informed Globe that Tenex would no longer sell uranium to Globe, effective January 2004, because further sales were "inimical to the interests of the Russian Federation." After Tenex's announcement, Globe submitted a request for arbitration. A panel of three arbitrators (the tribunal) was appointed to conduct the proceedings in Sweden.

In its amended claim for relief, Globe asserted that Tenex breached the contract, and that Globe was entitled to more than $944 million in damages plus costs. The parties held a pre-hearing conference in Arlanda, Sweden, and agreed upon a set of procedural rules to govern the arbitration proceedings (the Arlanda Rules). The Arlanda Rules provided, in part, that each witness must submit a written statement, and must testify before the tribunal and be available for cross-examination.

4

Before the arbitration hearings began, Tenex informed the tribunal that indictments had been filed in the United States charging a former Russian Federation government official and a Globe executive with using money stolen from the United States government to purchase shares of Globe. The General Prosecutor's Office of the Russian Federation (the Russian Prosecutor General) began a related criminal investigation (the Russian criminal investigation) of several individuals allegedly involved in a conspiracy to gain control of Globe and to defraud the Russian Federation. Tenex informed the tribunal that the Russian criminal investigation might affect Tenex's defense in the arbitration proceedings and requested that the record remain open to receive new evidence that may be revealed by the Russian criminal investigation. Globe opposed this request for several reasons, including that the Russian criminal investigation was irrelevant to the issues before the tribunal.

In October 2005, the tribunal conducted a procedural hearing to determine to what extent the Russian criminal investigation should affect the arbitration proceedings. At that hearing, Tenex asserted that the Russian criminal investigation revealed that before Tenex and Globe entered into the contract, a group of individuals, including a Globe executive, engaged in a fraudulent scheme to obtain a controlling interest in Globe in the corporate name of TKST,

5

Inc. (TKST). Tenex asserted that these individuals (the alleged TKST conspirators) misrepresented to Tenex that TKST was acting in the interests of Tenex and the Russian Federation, when TKST actually served to benefit the alleged TKST conspirators. Tenex asserted that these facts rendered the contract inequitable and therefore invalid under Section 33 of the Swedish Contracts Act. As applicable to this case, Section 33 of the Swedish Contracts Act provides that an otherwise valid contract will not be enforced when one party has knowledge that the circumstances leading to the contract's formation are inequitable.

In November 2005, the tribunal issued a schedule of hearings. That schedule reflected the tribunal's decision to consider the breach of contract issue in the initial phase of hearings, and to determine damages, if necessary, in a second phase of hearings. The tribunal stated that it would "later decide whether and, if so, to what extent new evidence, which may come up in the ongoing criminal investigations" would be allowed. The tribunal concluded that if it decided to allow such new evidence, then the tribunal would conduct a third phase of hearings to consider the validity of the contract.

In August 2006, after conducting the first phase of hearings, the tribunal issued a partial award in favor of Globe, based on the tribunal's conclusion that Tenex breached the contract. In that award, the tribunal rejected four independent

6

grounds of defense asserted by Tenex.  The tribunal proceeded to conduct the second phase of hearings to determine damages, but deferred its ruling on that issue.

In December 2006, Tenex submitted 460 new exhibits and a brief addressing the validity of the contract.  Those 460 exhibits included transcripts documenting interviews between the Russian Prosecutor General and several individuals regarding, in part, TKST's purchase of Globe shares.  Globe objected to the tribunal's consideration of those 460 exhibits on the basis that the tribunal did not have authority to review matters involving Russian criminal law.  Globe reasserted this objection several times throughout the arbitration proceedings but raised no other objections regarding the transcripts from the Russian Prosecutor General.

The tribunal accepted the new evidence and proceeded to conduct the third phase of hearings to consider the validity of the contract.  At the close of those hearings, Globe renewed its objection to the tribunal's consideration of criminal matters.

In its final award, the tribunal ruled in favor of Tenex, holding that the contract was invalid under § 33 of the Swedish Contracts Act.  The tribunal awarded Tenex $5 million plus interest to compensate Tenex for its attorneys' fees and costs, and dismissed Globe's claims.

The tribunal concluded in the final award that Tenex assisted TKST in acquiring a majority share of Globe because Tenex was led to believe that the Russian Federation owned and controlled TKST. The tribunal determined, however, that TKST actually was acting in the interests of the alleged TKST conspirators. The tribunal concluded that Globe was aware of this circumstance when the parties entered the contract and that, therefore, the contract could not be enforced equitably.

Also in its final award, the tribunal addressed Globe's objection to the tribunal's consideration of the evidence obtained from the Russian criminal investigation. The tribunal stated that it permissibly could "take into account such facts that also may constitute a criminal offence or, as an incidental question, decide whether a certain act or omission constitutes an offence, and consider the civil aspects thereof."

Tenex filed a complaint in the district court seeking confirmation of the final award. The district court had jurisdiction to consider the complaint under the Federal Arbitration Act, which incorporates the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (the Convention). See 9 U.S.C. §§ 203, 207. Globe filed pleadings opposing Tenex's requested relief and also filed a motion to confirm the tribunal's partial award.

8

After conducting a hearing, the district court entered an order confirming the final award in favor of Tenex and denying Globe's motion to confirm the partial award. On appeal, Globe asserts that because the tribunal committed several errors relating to its final award, the district court should have confirmed the partial award instead.

## II.

The scope of judicial review of an arbitration award is "among the narrowest known at law." Three S. Del., Inc. v. Dataquick Info. Sys., Inc., 492 F.3d 520, 527 (4th Cir. 2007)(quoting Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc., 142 F.3d 188, 193 (4th Cir. 1998)). We have explained that expansive judicial scrutiny of such awards would undermine important benefits of arbitration, such as avoiding the delay and expense associated with litigation. Id. Therefore, a court considering a complaint seeking confirmation of an arbitration award may determine only whether the arbitrators acted within the scope of their authority, and may not consider whether the arbitrators acted correctly or reasonably. Id. (citing Remmey v. PaineWebber, Inc., 32 F.3d 143, 146 (4th Cir. 1994)).

We review a district court's confirmation of an arbitration award de novo. Raymond James Fin. Servs., Inc. v. Bishop, 596

9

F.3d 183, 190 (4th Cir. 2010). The district court's findings of fact are reviewed for clear error. Id.

In order for a reviewing court to vacate a foreign arbitration award, the moving party must establish one of the grounds for refusal specified in the Convention. 9 U.S.C. § 207; see Three S. Del., 492 F.3d at 527. Article V of the Convention sets forth several bases for refusal, including the following grounds relevant to this appeal:

> (1)(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator . . . or was otherwise unable to present his case; or

> (1)(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration. . . ; or

> (1)(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place. . . ; or

> (2)(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

21 U.S.T. at 2520.

### A.

Globe argues that the district court erred in confirming the final award, because the tribunal improperly considered transcripts from the Russian Prosecutor General documenting interviews conducted with various individuals. Globe contends

10

that these transcripts constituted "witness statements" under the Arlanda Rules and, thus, that Tenex was required to make the individuals referenced in the transcripts available for cross-examination. Globe asserts that by considering these transcripts, the tribunal violated the governing procedural rules established by the parties, a ground for refusal of an arbitration award in Article V(1)(d) of the Convention, and denied Globe the opportunity to "present its case" and cross-examine witnesses, a separate ground for refusal in Article V(1)(b) of the Convention.

We conclude that Globe waived this argument by failing to raise it during the arbitration proceedings. The district court found that Globe did not object during the arbitration proceedings to the tribunal's consideration of the transcripts on the ground that they constituted "witness statements" under the Arlanda Rules. The record before us supports the district court's finding and shows that Globe posed only "blanket" objections to the tribunal's consideration of the 460 exhibits at issue. Globe objected to those exhibits numerous times during the proceedings on the grounds that the Russian criminal investigation was irrelevant to the arbitration proceedings, and that the tribunal lacked authority to consider criminal matters.

Globe did not raise any objection during the arbitration proceedings about its inability to cross-examine the individuals

11

who made the alleged "witness statements," or argue that the tribunal's consideration of the transcripts would violate the Arlanda Rules. Therefore, we will not consider the merits of Globe's argument on this issue, because it was raised for the first time in the district court. See Kreiter v. Lufthansa German Airlines, Inc., 558 F.2d 966, 968 (9th Cir. 1977)(defects in proceedings prior to or during arbitration may be waived by party's acquiescence); Order of Ry. Conductors v. Clinchfield R.R. Co., 407 F.2d 985, 988 (6th Cir. 1969)(same).

B.

Globe next argues that the district court erred in confirming the final award because, in that award, the tribunal improperly engaged in an assessment of Russian criminal law and "considered the rights and interests" of individuals other than the parties to the contract. According to Globe, the tribunal reached conclusions in its final award regarding the question whether the alleged TKST conspirators held stock in Globe through a "secret joint venture" and deceived Russian officials about the existence of this venture, and whether the contract was executed to "funnel profits" from Tenex to Globe and ultimately to the alleged TKST conspirators. Globe argues that in reaching these conclusions, the tribunal exceeded the scope of its review permitted under the arbitration clause, a ground for refusal set forth in Article V(1)(c) of the Convention.

12

Globe maintains that this scope of review was limited to an application of Swedish law to the rights of the parties to the contract.

Globe also argues that because the final award contained "criminal findings," the tribunal "mimicked" a Russian criminal court in violation of the public policy interest in protecting the integrity of international arbitration, a ground for refusal of an arbitration award set forth in Article V(2)(b) of the Convention. We disagree with Globe's arguments.

The tribunal's authority under the plain language of the arbitration clause broadly provides that "any [] dispute, controversy or claim arising out of or relating to [the contract] or the breach, termination or invalidity thereof" shall be settled by arbitration (emphasis added). Therefore, the tribunal was permitted to consider the alleged criminal acts of various individuals to the extent that those acts related to the issue of the contract's validity under § 33 of the Swedish Contracts Act, a defense asserted by Tenex.

The tribunal determined in its final award, based in part on evidence obtained from the Russian criminal investigation, that the alleged TKST conspirators knowingly concealed from Tenex the true nature of TKST's ownership and interests. This conclusion served as the basis for the tribunal's ruling that the contract was inequitable and, therefore, was invalid.

13

The tribunal's conclusion, however, did not constitute an "assessment" of criminal law, nor did the tribunal attempt to hold any individual or entity criminally liable in any respect. Additionally, the final award does not contain citation to any principles of Russian criminal law nor does it include any application of such legal principles. Therefore, we hold that the tribunal, in considering evidence from the Russian criminal investigation, did not exceed the scope of its authority in the arbitration clause, within the meaning of Article V(1)(c) of the Convention, and did not violate the public policy interest in protecting the integrity of international arbitration, within the meaning of Article V(2)(b) of the Convention.

C.

Finally, Globe argues that the district court erred in confirming the final award because, in that award, the tribunal reconsidered matters already resolved conclusively in the partial award. Globe contends that during the first phase of the hearings, Tenex presented evidence and argument addressing whether the alleged TKST conspirators engaged in unethical and fraudulent conduct affecting the negotiation of the contract. Globe further contends that the tribunal dismissed these allegations in the partial award, stating that the grounds "which Tenex has invoked as its defense. . . do not relieve Tenex from its contractual liability." Accordingly, Globe

14

asserts that the tribunal exceeded the scope of its authority, within the meaning of Article V(1)(c), when the tribunal reconsidered Tenex's previously-asserted defense in determining the final award. Globe thus maintains that the partial award completely disposed of all claims submitted to the tribunal by the parties, and requests that we direct the district court to confirm the partial award. We disagree with Globe's arguments, and decline to order confirmation of the partial award.

Arbitrators complete their function and lose their authority to act after making a final determination on a matter. Trade & Transport, Inc. v. Natural Petroleum Charterers, Inc., 931 F.2d 191, 195 (2d Cir. 1991); Colonial Penn Ins. Co. v. Omaha Indem. Co., 943 F.2d 327, 331 (3d Cir. 1991). This principle, known as the doctrine of functus officio, prevents an arbitrator from reexamining the merits of a final award. Trade & Transport, 931 F.3d at 195; Colonial Penn Ins., 943 F.2d at 331-32.

An award is final in nature when the arbitrators intend to include in the award their complete determination of all claims submitted for arbitration. Hart Surgical, Inc. v. UltraCision, Inc., 244 F.3d 231, 233 (1st Cir. 2001); Anderson v. Norfolk & Western Ry. Co., 773 F.2d 880, 883 (7th Cir. 1985); Michaels v. Mariforum Shipping, S.A., 624 F.2d 411, 413-14 (2d Cir. 1980). Nevertheless, an interim arbitration award that finally and

15

definitively disposes of a separate, independent claim may be confirmed in the absence of a final award. <u>Island Creek Coal Sales Co. v. City of Gainesville</u>, 729 F.2d 1046, 1049 (6th Cir. 1984).

In the present case, the tribunal issued a schedule of hearings, which provided that the issues of breach of contract and potential damages would be addressed during the first two phases of hearings. The schedule also established that if the tribunal later decided to allow additional evidence, the tribunal would consider the issue of contract validity in a third phase of hearings.

While a court ordinarily might consider the validity of a contract before considering whether a party breached that contract, the district court correctly observed that the unusual procedure in this case was warranted based on the potentially-relevant Russian criminal investigation. Moreover, the tribunal's schedule of hearings explained that the tribunal explicitly reserved consideration of the issue of the contract's validity for the third phase of hearings.

The record demonstrates that the tribunal followed its announced schedule, and did not address in the partial award Tenex's defense that the contract was invalid under § 33 of the Swedish Contracts Act. The tribunal considered and rejected in the partial award other independent grounds of defense raised by

16

Tenex as reasons for its termination of the contract. Because the partial and the final awards resolved different legal issues, the tribunal was not prohibited in the third phase of hearings from considering the same facts it previously had considered in determining its partial award.

We conclude that the partial award did not definitively dispose of any severable claim or constitute a final determination of the issues presented by the parties. Thus, the partial award was rendered moot by the tribunal's conclusion in the final award that the contract was not enforceable. See Hart Surgical, 244 F.3d at 233; Anderson, 773 F.2d at 883; Michaels, 624 F.2d at 413-14. Accordingly, we hold that the tribunal did not violate the doctrine of functus officio, and that the district court did not err in declining to affirm the partial award. See Trade & Transport, 931 F.3d at 195; Colonial Penn Ins., 943 F.2d at 331-32.

For these reasons, we affirm the district court's judgment confirming the final arbitration award.

AFFIRMED

17