In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 19-2336

STANDARD SECURITY LIFE INSURANCE COMPANY OF NEW YORK, *et al.*,

*Plaintiffs-Appellees,*

*v.*

FCE BENEFIT ADMINISTRATORS, INC.,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 19 CV 64 — **Ronald A. Guzmán**, *Judge.*

---

ARGUED MAY 28, 2020 — DECIDED JULY 28, 2020

---

Before MANION, KANNE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* This case had its origins in an Administrative Services Agreement that Standard Security Life Insurance Company of New York and Madison National Life Insurance Company, Inc. (collectively, the "Insurers") entered into with FCE Benefit Administrators, Inc. ("FCE"). Under that agreement, FCE administered health insurance policies underwritten by the Insurers. After a few years, however, the

Insurers became dissatisfied with FCE's performance, and so they invoked the Agreement's arbitration clause.

The arbitration proceeded in two phases. In Phase I, the arbitrators awarded the Insurers damages of more than five million dollars. The Insurers attempted to confirm this award in the Northern District of Illinois, but the district court concluded that this effort was premature because the case was not yet ripe for adjudication. This was so because the arbitrators had not yet resolved all matters that had been submitted to them. In Phase II, the arbitrators denied the Insurers' remaining claim and FCE's counterclaim. After the conclusion of Phase II, the Insurers once again sought confirmation. This time, the district court confirmed the arbitration results in their entirety, meaning both the Phase I and Phase II awards. FCE now appeals from the confirmation of the Phase I award. Finding no reason to set aside the district court's conclusion, we affirm its judgment.

**I**

The parties entered into the initial agreement effective January 1, 2011; four years later, they amended it, but they made no changes material to this case. The Agreement assigned to FCE the job of serving as the third-party administrator for policies underwritten by the Insurers. Under Section 18 of the Agreement, the parties promised to settle most disputes "by arbitration in accordance with the rules for commercial arbitration of the American Arbitration Association (or a similar organization) in effect at the time such arbitration is initiated … ." (There was an exception, which we discuss below, for indemnity disputes.)

In May 2015, the Insurers, unhappy with FCE's performance, terminated the Agreement. Two years later, alleging that FCE had breached many of its obligations under the Agreement, the Insurers filed a formal arbitration demand with FCE. They alleged that FCE had failed to remit premiums, had failed to process healthcare claims in a timely and proper manner, and had taken excessive and unearned fees. The Insurers also alleged that FCE caused them to incur regulatory penalties and fines. FCE counterclaimed, asserting that the Insurers wrongfully terminated the Agreement.

As required by the Agreement, an arbitral panel consisting of two party-designated arbitrators and an umpire was assembled. It scheduled a hearing for September 2018. In July 2018, FCE requested a continuance for discovery purposes, and it sought permission to file an amended counterclaim. The arbitrators issued an interim order on July 27, 2018, denying FCE's request for a continuance but granting its motion for leave to file an amended counterclaim. The order stated that "[t]he counterclaims will be presented in a second phase of the Hearing which will take place in November/December of this year." The parties and the arbitrators referred to this bifurcated process as "Phase I" and "Phase II."

The Phase I hearing was held on September 25–29 and October 25, 2018. A month later, on November 30, the arbitral panel discussed the evidence at a post-hearing teleconference. Afterwards, the panel asked the parties to submit their proposed awards for Phase I. Each side did so, and on December 31, 2018, the panel issued a document entitled "Partial Final Award – Phase I" (the "Phase I Award"), which read in pertinent part as follows:

The Panel in the above-captioned arbitration, duly appointed by mutual agreement of the parties, upon consideration of all documents, arguments, and evidence submitted by Petitioners [Standard] and [Madison] (collectively "Petitioners") and Respondent [FCE], and after having held a full hearing of Phase I of this arbitration from September 25 through September 29, October 25 and November 30, 2018 hereby renders its Partial Final Award as follows:

1.  Petitioners were within their rights to terminate the amended Agreement for cause.

2.  FCE shall pay to Petitioners the principal amounts due with respect to each Category of Damages as set forth in the chart annexed as Exhibit A hereto, together with interest calculated thereon at the rate of 5% per annum, as set forth therein. Such payment shall occur within twenty (20) business days of the date of this Partial Final Award. After such time, interest shall run at 9% per annum.

3.  Each party shall bear its own costs, including the costs of its party-appointed arbitrator. The parties shall split equally the costs of the Umpire and the catering expenses associated with the Hearing.

4.  The Panel members shall be paid within thirty (30) days of the date hereof.

5.  All other claims for relief by the parties are denied.

A chart attached as Exhibit A, "Damages Owed to Petitioners," provides for an award of $5,348,352.81 to the Insurers.

Three days later, on January 3, 2019, the Insurers filed a motion to confirm the Phase I Award under the Federal Arbitration Act, 9 U.S.C. § 9, in the district court for the Northern District of Illinois. FCE responded that the motion was premature because the arbitration had not concluded. Alternatively, FCE moved to vacate portions of the Phase I Award under 9 U.S.C. § 10.

While the motions were pending in the district court, Phase II of the arbitration proceeded. On January 18, 2019, FCE requested that the arbitrators reconsider the Phase I Award. The panel held the Phase II hearing on February 11–15, 2019, and then denied FCE's request to reconsider the Phase I Award on February 28.

Meanwhile, on March 13 the district court entered an opinion and order dismissing the Insurers' action without prejudice. The court determined that the matter was not ripe for adjudication because the panel had not finished the arbitration. This was actually mistaken: at the time the court entered its opinion and order, it was unaware (because the parties had not informed it) that two days before, on March 11, the arbitral panel entered this "Final Phase II Award" (the "Phase II Award"):

> The Panel in the above-captioned arbitration, duly appointed by mutual agreement of the parties, upon consideration of all documents, arguments, and evidence submitted by Petitioners [Standard] and [Madison] (collectively "Petitioners") and Respondent [FCE], and after having held a full hearing of the newly asserted claims in Phase II of this arbitration from February 11 through February 15, 2019, hereby renders its Final Phase II Award as follows:

1. FCE's claim for lost profits damages is denied.

2. Petitioners' claim for reimbursement of excessive administrative fees taken by FCE on limited medical benefits plans in the amount of $477,810.00 is denied.

3. Each party shall bear its own costs, including the costs of its party-appointed arbitrator. The parties shall split equally the costs of the Umpire and the catering expenses associated with the Hearing.

4. All other claims for relief by the parties are denied.

5. The Panel members shall be paid within thirty (30) days of the date hereof.

After the district court issued its opinion, the Insurers filed a motion for leave to reinstate the case and to file a second amended petition to confirm both the Phase I and Phase II Awards. The court granted the motion and ultimately affirmed both the Phase I Award, over FCE's objections, and the Phase II Award.

## II

"Judicial review of arbitration awards is tightly limited." *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994). Confirmation is "usually routine or summary," *Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 691–92 (7th Cir. 2004), and a court will set aside an arbitration award "only in very unusual circumstances," *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995). "With few exceptions, as long as the arbitrator does not exceed [her] delegated authority, her award will be enforced. This is true even if the arbitrator's award contains a serious error of law or fact." *Butler Mfg. Co.*

*v. United Steelworkers of Am., AFL-CIO-CLC*, 336 F.3d 629, 632 (7th Cir. 2003). We review "a district court's decision confirming an arbitration award under ordinary standards: accepting findings of fact that are not clearly erroneous and deciding questions of law *de novo*." *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 592 (7th Cir. 2001).

FCE offers three reasons why the district court should not have confirmed the Phase I Award. First, it argues that the Phase II Award supersedes the Phase I Award such that the district court could confirm only the Phase II Award. Second, FCE contends that part of the Phase I Award must be vacated because the arbitrators exceeded their authority by hearing and deciding the Insurers' indemnification claims. Third, it asserts that it was reversible error for the district court to confirm the portion of the Phase I Award labeled as damages for "embezzlement."

A

We begin with FCE's assertion that the Phase II Award encompassed the entire dispute between the parties and thus superseded the Phase I Award. FCE argues that the Phase II Award somehow erased the Phase I Award, rather like the idea that claims "merge" into a final judgment. It relies heavily on the fact that the Phase II Award states that "[a]ll other claims for relief by the parties are denied." This language, FCE contends, indicates that the Phase II Award was the only final award and therefore the only award that could be confirmed. FCE relies primarily on two cases for support: *Anderson v. Norfolk & W. Ry. Co.*, 773 F.2d 880 (7th Cir. 1985) and *AO Techsnabexport v. Globe Nuclear Servs. & Supply GNSS, Ltd.*, 404 F. App'x 793 (4th Cir. 2010).

These cases, however, are easily distinguishable. In *Anderson*, we considered two arbitration awards that addressed the same claims. We ultimately decided the case on standing, but the opinion also commented on the merits. The *Anderson* arbitrator's first award ruled on two of the three issues submitted to him, but he determined that the parties "had not exhausted their efforts to negotiate a complete implementing agreement." 773 F.2d at 881. This prompted him to "sen[d] the parties back to the bargaining table" to resume negotiations of a "final and complete disposition of all issues." *Id.* Having "expressly reserved arbitral jurisdiction of the matter" in his first award, the arbitrator later approved the parties' successfully negotiated commercial resolution as his "final binding award." *Id.* We observed that because the arbitrator's first award "expressly stated that he was resubmitting the matter to [the parties] for further negotiations in the hope that they could reach a complete resolution of all issues," the arbitrator did not intend his first award to be final. *Id.* at 883.

Unlike in *Anderson*, the record here indicates that the arbitral panel deliberately bifurcated the arbitration to decide discrete claims in each phase. The panel plainly intended the Phase I Award to be final for all of the Phase I claims. Why else would it have entitled the Phase I Award "Partial Final Award - Phase I"? Both the word "partial" and the word "final" eliminate any possible doubt on the matter. In addition, before the panel issued its Phase II Award, FCE asked it to reconsider the Phase I Award, but the panel denied that request. This again indicates the finality of the Phase I Award. And, although the Phase II Award states that "[a]ll other claims for relief by the parties are denied," in context that phrase makes sense only if it refers to the claims that were under submission during Phase II—the "newly asserted

claims in Phase II of this arbitration … ." Only in that sense did the arbitral panel deny "[a]ll other claims for relief" that remained in Phase II. It already had told the parties that it was not re-opening the previously decided Phase I claims.

FCE also relies on *AO Techsnabexport*, but it is no help either. In that case the Fourth Circuit declined to confirm the arbitrators' initial award because they had not disposed of certain issues. The arbitral tribunal had held trifurcated hearings on a breach-of-contract claim. The Fourth Circuit explained that the partial award after the first phase did not "definitively dispose of any severable claim or constitute a final determination of the issues presented by the parties" and thus "was rendered moot by the tribunal's conclusion in the final award that the contract was not enforceable." *AO Techsnabexport*, 404 F. App'x at 800. As in *Anderson*, the *AO Techsnabexport* arbitrators did not decide discrete claims in each phase. In contrast, the panel in this case bifurcated the claims and issued a final award after each phase for those specific claims.

FCE also argues that the Phase II Award must supersede the Phase I Award because otherwise the district court's decision is at odds with its first order in this action. Recall that the Insurers attempted to confirm the Phase I Award immediately after the conclusion of Phase I of the arbitration, and that the district court dismissed the action without prejudice as unripe. FCE contends that the district court's dismissal proves that the Phase I Award was incomplete and unconfirmable.

FCE is mixing apples and oranges here. The arbitrators did not face a stark choice of either issuing a complete final order, disposing of all claims of all parties, or remaining silent. They had the option of a middle ground, resolving one set of claims first and then another. This is common for first-instance

tribunals. District courts regularly do the same thing, and their interim decisions are not appealable unless the criteria for a final judgment under Federal Rule of Civil Procedure 54(b) are satisfied. The arbitrators were equally entitled, for purposes of organizing their own work, to take up some claims before others. But that does not mean that the case was ready for the district court before it was fully resolved. These were two different tribunals, playing different roles in the process, and they were bound by different rules of finality. See *Olson v. Wexford Clearing Servs. Corp.*, 397 F.3d 488, 491 (7th Cir. 2005) ("In determining the finality of an arbitration award, [courts] consider whether 'the award itself, in the sense of judgment, order, bottom line, is incomplete in the sense of having left unresolved a portion of the parties' dispute.'"). There was no conflict between the district court's two decisions.

B

Next, FCE argues that even if the Phase I Award was confirmable, a portion of it must be set aside because the arbitrators exceeded their authority under 9 U.S.C. § 10(a)(4) by hearing and deciding the Insurers' indemnification claims. It is particularly concerned about the panel's Phase I award of damages for "Fines & Penalties" imposed by the Texas Department of Insurance (TDI), and "Legal Fees & Costs" incurred by the Insurers in defending against the TDI action and against a separate U.S. Department of Labor action. FCE contends that the panel should not have awarded these damages under Section 17 of the Agreement because Section 18(a) of the Agreement expressly carves out such claims from the arbitration process.

Section 17 of the Agreement provides for mutual indemnification. The arbitration clause refers to Section 17 in the following way:

> (a) In the event of any dispute between the parties which arises under this Agreement, *except for a dispute arising under Section 17*, such dispute shall be settled by arbitration in accordance with the rules for commercial arbitration of the American Arbitration Association (or a similar organization) in effect at the time such arbitration is initiated, in the manner set forth below. *Should a dispute arise under Section 17, either party may elect to invoke Section 19 below.*

Section 18(a) (emphasis added). Section 19, titled "Submission to Jurisdiction," says in pertinent part:

> (a) Any legal suit, action or proceeding arising out of or relating to Section 17 of this Agreement or the transactions contemplated hereby, when invoked by either party, shall be instituted in the federal courts of the United States of America or the courts of the State of Texas, in each case located in Dallas County, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding.

FCE argues that under the plain wording of Section 18, all disputes arising under Section 17 are removed from the scope of the parties' arbitration agreement. Any other interpretation, it contends, renders the language of Section 19, vesting "exclusive jurisdiction" for such claims in the federal and state courts of Texas, superfluous. Moreover, FCE argues, in this case the onus was on the Insurers, not FCE, to pursue the

indemnity disputes in court. FCE concludes that the Insurers' failure to do so does not make those claims arbitrable.

The district court interpreted these provisions differently. It concluded that the "only reasonable reading" of Sections 18 and 19 as a whole is that "the parties agreed to arbitrate such disputes, *unless* one of the parties elected to invoke its right to litigate them in federal or state court." This makes sense to us. The Agreement specifies that if a dispute arises under Section 17, either party *may elect* to invoke Section 19. In other words, Section 19 is permissive and not mandatory. Section 19 confirms this reading by stating that a suit arising from Section 17 will be instituted in the federal or state courts *when invoked by either party*. See *Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 679 n.2 (7th Cir. 2007) ("Contractual jurisdiction, venue, and forum clauses can be mandatory (exclusive) or permissive (nonexclusive).").

Here, neither party invoked Section 19, and so the arbitrators acted within their authority in deciding the Insurers' indemnification claims. And if that were not enough, there is also a waiver problem here. Although FCE eventually objected to the arbitrability of the Insurers' indemnification claims multiple times, it did so only after the panel issued the Phase I Award. FCE asserts that this was not too late, because Section 31 of the Agreement, "Waiver," provides that there can be no "waiver of any … right or remedy unless in writing and signed by each of the parties." But it is not clear that this language extends to the obligation to arbitrate once a dispute is underway and the parties have exchanged numerous written documents. We have held that "[i]f a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that

the arbitrator lacked authority to decide the matter." *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000). Moreover, this arbitration was to be settled under the commercial rules of the American Arbitration Association. Under AAA Rule 7, a "party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection." FCE did not do so. For all these reasons, therefore, we conclude that the arbitrators acted within their authority in deciding the indemnification claims.

C

FCE finally contends that the district court erred in confirming the Phase I Award because the arbitration panel exceeded its authority under 9 U.S.C. § 10(a)(4) by awarding damages for "Embezzlement." Under the Agreement, FCE was to receive as an administrative fee a percentage of gross collected premiums. FCE took a 5.55% administrative fee, but the Insurers claimed that the agreed percentage was 4.3%. The arbitral panel agreed with the Insurers. It calculated the difference between the fee FCE took and the fee to which it was entitled and awarded the Insurers $550,000. On Exhibit A, the panel labeled this award "Embezzlement."

FCE argues that the panel did not have the authority to make this decision. The panel's authority, FCE emphasizes, extended only to disputes "which arise[] under this Agreement." FCE contends that embezzlement—a crime—does not arise under the Agreement and is therefore not a claim upon which the arbitrators were authorized to award damages.

Although the panel used the term "embezzlement," it was nothing more than purple prose. The panel did not (and could not) make a conclusive finding about a crime; it merely determined the proper administrative fee. Thus, the claim arose under the Agreement and the arbitrators acted within their authority. See *Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1194–95 (7th Cir. 1987) ("[T]he question for decision by a federal court asked to set aside an arbitration award … is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract.").

FCE also asserts that the award for "embezzlement" violated its due process rights. It rests this argument on the fact that the Insurers never pleaded a claim for embezzlement, and so no such claim was litigated in the arbitration. It was not until the Insurers' closing argument, FCE contends, that the Insurers argued that they were pursuing the claim as one for "embezzlement."

Despite the dramatic label, the "embezzlement" claim was the garden-variety assertion that FCE took excessive and unearned administrative fees from the Insurers. FCE had notice of and attempted to defend against this assertion in Phase I of the arbitration. Although the Insurers admit to using the word "embezzlement" in their closing argument, they emphasize that the underlying claim did not change; they were simply using the term because an arbitrator had used it.

None of FCE's arguments persuades us that the district court should have set aside either part of the arbitral awards, and so we AFFIRM its judgment.