In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-1633

BARTLIT BECK LLP,

*Petitioner-Appellee*,

*v.*

KAZUO OKADA,

*Respondent-Appellant*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 19-cv-08508 — **John F. Kness**, *Judge*.

ARGUED NOVEMBER 10, 2021 — DECIDED FEBRUARY 8, 2022

Before MANION, ROVNER, and WOOD, *Circuit Judges*.

WOOD, *Circuit Judge*. This case originated as a high-stakes lawsuit between Kazuo Okada, a titan of the gambling industry, and Wynn Resorts, another major player in that field. But the merits of that dispute are not before us. Instead, we must address only attorneys' fees, and only whether the award of the arbitrators to whom the fee dispute was submitted should be enforced or set aside.

Recognizing that vacatur would be an unusual step, Okada insists that his is the rare case in which it is warranted. He contends that he was not able to present his case to the arbitrators. But that oversimplifies matters. Although Okada had participated for over a year in the arbitral process that Bartlit Beck LLP, the law firm seeking to collect its fees, had initiated on July 27, 2018, his cooperation ended abruptly just days before an evidentiary hearing that had long been scheduled for Monday, October 28, 2019. The preceding Friday, Okada suddenly announced that he would not attend the hearing. The arbitrators ("the Panel") held him in default and proceeded based only on the written submissions from Bartlit Beck. After the Panel entered a final award in favor of Bartlit Beck, the firm petitioned the district court to confirm the award. Okada urged the court to vacate the award instead, on the ground that the proceeding was fundamentally unfair. The district court sided with Bartlit Beck and confirmed the award. We affirm.

**I**

In 2017 Okada hired Bartlit Beck to represent him in a multi-billion-dollar lawsuit against Wynn Resorts and its then-CEO, Steve Wynn. But when the Wynn litigation settled in Okada's favor for $2.6 billion, Okada refused to pay the $50 million contingent fee specified in the parties' engagement agreement. That agreement included an arbitration clause, and so Bartlit Beck initiated arbitration before the International Institute for Conflict Prevention and Resolution ("CPR"), the forum agreed upon by the parties.

As we noted, Okada participated in the arbitration for over a year. But less than 72 hours before the evidentiary hearing set by the Panel, Okada informed the arbitrators that he

would not be attending. Initially, he cited no reason for this sudden shift. The Panel immediately stated that it planned to proceed with or without him and that his nonattendance could subject him to default. Okada replied that his reason for boycotting the hearing was that he rejected the validity of the engagement agreement. He later added that even if he were inclined to attend, he would be unable to make the journey from Japan to Chicago (the agreed site of the arbitration) for undisclosed medical reasons. Shortly thereafter, Okada announced that he was not authorizing his attorneys to participate in the arbitration, and he was canceling all witnesses, reservations, and services.

The Panel decided to take Okada at his word, and it held him to be in default. Relying on CPR Rule 16, which allows the Panel to "receive [the non-defaulting party's] evidence and argument without the defaulting party's presence or participation," it proceeded based only on Bartlit Beck's written submissions. On December 20, 2019, the Panel entered its Final Award, which found that Okada owed the firm $54.6 million, a sum that included a $963,032 sanction for the costs and fees of the proceeding.

Bartlit Beck followed up on December 30, 2019, with a petition in the district court to confirm the award. Okada moved to vacate the award and remand the matter to CPR. He contended that he had been deprived of a fundamentally fair proceeding when the Panel decided the case without his participation or his evidence. The district court was unpersuaded: it ruled that the Panel had several reasonable bases for proceeding without him and there was nothing unfair about the proceeding. It thus confirmed the award, and Okada now appeals. (Initially he was represented by counsel, but we

granted counsel's motion to withdraw in an order dated December 21, 2021, and so Okada is now proceeding *pro se*.)

## II

"Judicial review of arbitration awards is tightly limited. Confirmation is usually routine or summary, and a court will set aside an arbitration award only in very unusual circumstances." *Standard Sec. Life Ins. Co. of N.Y. v. FCE Benefit Adm'rs, Inc.*, 967 F.3d 667, 671 (7th Cir. 2020) (cleaned up). "We review 'a district court's decision confirming an arbitration award under ordinary standards: accepting findings of fact that are not clearly erroneous and deciding questions of law *de novo*.'" *Id.*

On procedural and evidentiary matters, federal courts defer to arbitrators' decisions so long as those decisions are reasonable. See, *e.g.*, *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 400 (5th Cir. 2006); *El Dorado Sch. Dist. No. 15 v. Cont'l Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001). Although they are entitled to fair proceedings, "parties that have chosen to remedy their disputes through arbitration rather than litigation should not expect the same procedures they would find in the judicial arena." *Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123, 1130 (7th Cir. 1997).

In this appeal, Okada raises only one issue: did the district court err when it concluded that the Panel did not deny Okada a fundamentally fair proceeding? The court found that the Panel had a reasonable basis for moving ahead as it did, and that was enough to settle the question. Okada counters that rationale with several arguments. First, he contends that both the Convention on the Recognition and Enforcement of Foreign Arbitral Awards and Chapter 1 of the Federal

Arbitration Act entitle him to a fundamentally fair proceeding. The district court here erred, in his view, when it did not conduct an independent examination of the fairness of the proceedings. Second, Okada contends that, by asking only whether the Panel had a reasonable basis for its actions, the court adopted a standard that is too deferential to the arbitrators. He asserts that it should have determined independently whether the Panel violated principles of fundamental fairness. Third and finally, Okada argues that even if we were to accept the district court's legal framework, the record shows that the Panel's actions lacked a reasonable basis.

We address these points in the order Okada has adopted.

## A

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "Convention"), implemented in Chapter 2 of the Federal Arbitration Act ("FAA"), governs arbitration awards that have a significant international element, such as foreign parties, or a dispute about property located abroad, or "some other reasonable relation with one or more foreign states." 9 U.S.C. § 202. See *Pine Top Receivables of Ill., LLC v. Banco de Seguros del Estado*, 771 F.3d 980, 988 (7th Cir. 2014) (*per curiam*). Bartlit Beck is a United States citizen and Okada is a citizen of Japan, a signatory nation. This satisfies one of the ways in which an arbitration agreement may be governed by the Convention. See 9 U.S.C. § 202.

The Convention mandates that "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. Under Article V(1)(b) of

the Convention, a court may refuse to recognize or enforce an arbitral award if "[t]he party against whom the award is invoked was … unable to present his case." This provision does not authorize a court to refuse to recognize or enforce an award unless it finds a denial of fundamental fairness in the arbitration proceedings. See *Generica Ltd.*, 125 F.3d at 1129; *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 592 (7th Cir. 2001).

Even though the arbitral award here is governed by the Convention, as implemented in Chapter 2 of the FAA, Okada reminds us that Chapter 1 of the FAA applies to proceedings governed by the Convention when there is no conflict between the relevant provisions. See 9 U.S.C. § 208. Chapter 1, which governs domestic disputes, sets forth the grounds on which a court may vacate an arbitral award. That list includes the situation "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy … ." 9 U.S.C. § 10(a)(3). This has been interpreted similarly to Article V(1)(b) of the Convention—that is, an arbitral award may be vacated where there has been a denial of fundamental fairness. See *Mical v. Glick*, 581 F. App'x 568, 570 (7th Cir. 2014); *Interface Sec. Sys., L.L.C. v. Edwards*, No. 03-4054, 2006 WL 8444029, at *14 (C.D. Ill. Mar. 30, 2006).

Since there appears to be no conflict between the Convention and Chapter 1 of the FAA here, Okada asks us to hold that both Article V(1)(b) of the Convention and section 10 of the FAA apply to his request to vacate the award. He points out that other courts have concluded as much. See, *e.g.*, *Zeiler v. Deitsch*, 500 F.3d 157, 164 (2d Cir. 2007). Faced with a similar question in *Johnson Controls, Inc. v. Edman Controls, Inc.*, we

wrote that "[i]t is not clear whether a party may bring an action under Chapter 1 to vacate an award issued by an arbitrator in a U.S. jurisdiction, but governed by the Convention." 712 F.3d 1021, 1025 (7th Cir. 2013). We recognized that "[t]his could be important in some cases, because the Convention grounds for vacatur are slightly different from those in Chapter 1 of the FAA." *Id.* Because "we d[id] not regard [*Johnson Controls*] as a close case," however, we saw no reason to answer the question. *Id.*

For the same reason, we decline to do so now. As we now explain, Okada cannot prevail under either provision.

B

Okada insists that when fundamental fairness is at issue, rather than the merits of an award, it is not enough simply to find that there is a minimally reasonable basis for the arbitral panel's actions. Instead, he argues, a court must ask whether the panel's decision was reasonable *and* fair. Looking only at reasonableness, he concludes, leads to an overly deferential standard of review.

This is a strained argument to begin with, but worse, it mischaracterizes the district court's decision. The district court did not overlook fairness. It concluded that the Panel's decision to proceed without Okada was fair *because* it was reasonable. Every circuit to conduct a fairness inquiry under similar circumstances has adopted this approach. See, *e.g.*, *Laws*, 452 F.3d at 400 ("Laws was not denied a fair hearing because the record supports several bases on which the panel reasonably could have denied him a continuance."); *id*. at 401 ("In light of these reasonable bases for denying Laws's continuance, the panel did not deny him a fair hearing."); *El Dorado*,

247 F.3d at 848 (explaining that "[c]ourts will not intervene in an arbitrator's decision not to postpone a hearing if any reasonable basis for it exists" and finding no fundamental flaw because "[a]ny or all of these explanations would provide a reasonable basis for the decision not to postpone."); *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) (reversing district court's decision that there was no denial of fundamental fairness because "[w]e find that there was no reasonable basis for the arbitration panel['s decision].");￼ *Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1016 (11th Cir. 1998) (explaining that "[i]n reviewing an arbitrator's refusal to delay a hearing, we must decide whether there was 'any reasonable basis' for failing to postpone the hearing to receive relevant evidence" and concluding that there was no denial of fundamental fairness because there was, in fact, such a reasonable basis).

The only case cited by Okada that deserves brief mention is *Bisnoff v. King*, 154 F. Supp. 2d 630 (S.D.N.Y. 2001). The district court there did analyze reasonableness and fairness separately and sequentially, see *id.* at 637, but that fact appears to reflect only the author's organizational preferences. It does not undermine the weight of the authorities we just cited, and in any event, we are not bound by an out-of-circuit district court decision.

Moreover, Okada's argument is beside the point, because on this record a more exacting review would have made no difference. Okada was not denied a fundamentally fair proceeding when, after *he* unequivocally announced his refusal to participate, the Panel chose to proceed without him.

C

Okada argues that the Panel's decision to move ahead with the hearing was both unreasonable and unfair because it did so in the face of knowledge that Okada (then in Japan) was facing a medical emergency, and for that reason could not come to Chicago for the hearing. The problem with this argument is that it finds no support in the record.

A review of the relevant email correspondence between Okada's attorney and the Panel makes plain that, sick or not, Okada was not going to participate in the hearing. The first relevant email from Okada's attorney to the Panel stated only that Okada "recently informed me that he is not attending the scheduled arbitration" and asked how the Panel wished to proceed. The email did not request a continuance, nor did it mention *any* illness that would bar Okada's attendance.

After the Panel replied that it would proceed with or without Okada and that Okada could be subject to default under CPR Rule 16 for failure to appear at a "duly and long noticed hearing," Okada replied that "[i]f Bartlit Beck does not agree that the alleged agreement is invalid, there is no need for me to attend the proposed arbitration." He added that "*[e]ven if I were to agree to participate in the proposed arbitration*, I am unable to do so due to my health." (Emphasis added.) That was it. He offered no explanation, let alone something like a doctor's note, to support his claimed health problem. He did not even hint that it was an emergency. Nor did he offer to appear by video or phone, and he never asked for a continuance. Finally, despite a lengthy back-and-forth over email regarding his nonattendance, he never mentioned his alleged health limitations again.

As if to remove any doubt that his refusal to attend was unrelated to his health, when the Panel said that it would

entertain arguments at the start of the hearing about the appropriate remedy for his nonattendance, Okada replied that his attorneys were "not authorized to attend the arbitration because he rejects the validity of the engagement agreement and objects to the proceeding." He added that "all reservations, witnesses and ordered services" were thus being canceled. At this juncture, the Panel declared that "[p]ursuant to CPR Rule 16, we will proceed with [Bartlit Beck's] evidence … given that Mr. Okada will not be presenting a defense." Shortly thereafter, the Panel added that "[Okada] has forfeited the right to present any defense so the Panel will not accept or consider any papers that he may now seek to submit." A week later, Okada's attorney sent the Panel a follow-up email in which he asked the Panel, "[i]f I could *convince* Mr. Okada to commit to a date certain … would you all consider … reschedul[ing] the hearing?" (Emphasis added.) If Okada's nonattendance had been health-related, he would need no convincing to attend at a later time; he would either be well enough to do so or not.

Okada now paints the Panel's action as a refusal to delay the hearing in the face of his asserted medical emergency. But nothing in the record supports that story. To the contrary, the Panel was both reasonable and fair when it decided to move ahead without him. It is hard to imagine what else it could have done, given Okada's flat refusal to participate.

But, Okada notes, just because he was not present did not mean that the Panel had to ignore his evidence and decide (as it did) exclusively on Bartlit Beck's written submissions. But Okada never asked the Panel to consider evidence from him notwithstanding his absence. The only thing in the record that even approximates such a request is an email from his

attorney asking the Panel "whether or not we will be entitled to present a defense *if authorized to do so*" by Okada. (Emphasis added.) Shortly thereafter, Okada told the Panel that his attorneys were *not* authorized to participate in the arbitration because he rejected its validity, and that he was canceling all reservations, witnesses, and services. Importantly, Okada communicated this before the Panel officially defaulted him and decided that he had forfeited his right to present a defense. His argument that it would have been futile to ask the Panel to consider his evidence (because the Panel had already made up its mind) is meritless.

In short, Okada was not denied any right to be heard when the Panel proceeded without evidence that he never offered. As Bartlit Beck points out, the Panel proceeded as expressly authorized by the default rule of the parties' chosen arbitral facility: "The [Panel] may receive [the non-defaulting party's] evidence and argument without the defaulting party's presence or participation." CPR Rule 16.

## III

Put plainly, Okada took himself out of the race. He cannot now complain that he was unfairly deprived of the chance to win. We AFFIRM the district court's judgment confirming the Panel's Final Award.